UNITED STATES of America, Plaintiff,

v.

**HODGES X–RAY, INC., et al., Defendants.**

**Civ. A. No. C 81–0610 L(A).**

United States District Court,
W.D. Kentucky,
Louisville Division.

Dec. 6, 1983.

As Amended Feb. 21, 1984.

**36**

Michael Spalding, Louisville, Ky., for plaintiff.

Ackerson, Ackerson & Blandford, Louisville, Ky., for defendants.

## MEMORANDUM OPINION

ALLEN, Chief Judge.

This action is submitted to the Court for decision upon cross-motions of plaintiff United States of America and defendants Hodges X-Ray, Inc. and James J. Hodges for summary judgment. The action is entitled "COMPLAINT FOR CIVIL PENALTIES" and arises under 42 U.S.C. § 263k(a) and 42 U.S.C. § 263k(b)(1) in accordance with 28 U.S.C. § 1355. Those statutory provisions were enacted under the Public Health Service Act, as amended by the Radiation Control for Health and Safety Act of 1968, hereinafter the "Act."

Defendant Hodges X-Ray, Inc., hereinafter the "Corporation," is a Kentucky corporation which was engaged in the manufacturing, certifying and selling of diagnostic x-ray systems. Its President at all times pertinent was defendant James J. Hodges, hereinafter "Hodges."

The defendants, during the years 1976 and 1977, sold their Traceray III diagnostic x-ray systems to chiropractors, doctors and veterinarians located in many different states of the United States. The plaintiff alleges that thirteen of the machines sold by the Corporation failed to comply with 21 CFR § 1020.31(a)(2) by failing to terminate x-ray exposure at the preselected time interval.

The complaint alleges that twenty-two of the machines sold by the Corporation during the period March 3, 1977 to August 4, 1977 failed to comply with 21 CFR § 1020.-31(a)(1) by failing to visibly indicate at the operator's position the selected exposure time in seconds or pulses. The complaint also alleges that ten units sold by the defendants failed to comply with both 21 CFR § 1020.31(a)(1) and 21 CFR 1020.31(a)(2). The complaint further alleges that the defendants violated 42 U.S.C. § 263j(a)(1) by delivering for introduction into interstate commerce the forty-four Traceray III diagnostic x-ray units which bear numbers 1–9 and 11–45.

It is also alleged that the defendants violated 42 U.S.C. § 263j(a)(5) by issuing

certification for twenty-two Traceray III diagnostic x-ray systems shown in the complaint as items 8–13, 25–35 and 41–45, when, in the exercise of due care, the defendants had reason to know that the certification was false or misleading because it implied to the purchaser that the system complied with and would continue to comply with all applicable standards for a reasonable period of time.

The United States introduced the declarations of all the personnel who had examined the machines which are the subject-matter of the complaint. There are a total of fifty-five inspectors who inspected the forty-five machines. The evidence of the inspectors contained in their declarations, which under applicable law may be received in lieu of affidavits in support of the motion for summary judgment, see 28 U.S.C. § 1746 and *Ceja v. United States*, 710 F.2d 812, 813 (Fed.Cir.1983), is to the effect that the violations, which the Government contends have occurred, did in fact occur, with the exception of four machines which the United States now concedes are no longer subject to penalty.

■ The defendants have not introduced any expert testimony to contradict the statements made in the declarations of the Government inspectors. However, they raise many contentions in opposition to the plaintiff's motion for summary judgment and in support of their own motions.

The Corporation, whose assets were sold in October 1977, contends that it is no longer liable for any penalties that might be assessed as a result of the alleged violations. It contends that the purchaser of its assets took over the obligation to correct any violations that had occurred with respect to the machines. It develops that the corporation to which it sold the machines is also defunct. The Corporation cites no authority for its contention that it is relieved of liability for the civil penalties simply because it sold the allegedly offending machines after the alleged violations had occurred.

Since the Act specifies that a manufacturer is liable for penalties for machines manufactured by it, and since the machines were manufactured by the Corporation, it is apparent that the Corporation is still liable for any penalties which might be assessed. Hodges contends that he is not liable for any penalties which might be assessed because he did not manufacture the machines.

■ The Act defines a manufacturer to be any person engaged in the business of manufacturing, assembling or importing of electronic products. 42 U.S.C. § 263(c)(3). Neither plaintiff nor defendants have cited the Court to any discussion by Congress with reference to the enactment of this provision. The Act does not define what it meant by the use of the word "person."

Plaintiff contends that the cases of *United States v. Park*, 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975) and *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943) are analogous to the case at bar and require a finding that corporate officials be held civilly liable. Those cases hold that corporate officials could be held criminally liable for violations of the FFDCA without a showing of *mens rea*. The rationale for these decisions is that, where Congress has enacted laws pertaining to the health of the general public, corporate officials who are responsible corporate agents must suffer punishment if they fail to implement measures that will insure that violations of the law do not occur. See *United States v. Park*, 421 U.S. at 672, 95 S.Ct. at 1911.

In *United States v. CGR Medical Corp., et al.*, Civil Action No. 80–2592–z (D.Mass. Sept. 13, 1982), the district court held, in a case arising under the identical Act as is involved here, that an individual defendant is not entitled to summary judgment on the ground that he was not the manufacturer or assembler as defined by 42 U.S.C. § 263(c)(3).

While there are no cases strictly in point, we start with the proposition that legislation designed to protect the public health must be given a broad and expansive reading. See *United States v. Park, supra*,

and *United States v. Dotterweich, supra.* We also believe that the legislation which controls the instant case, while it pertains to civil liabilities, would be subject to a broad and expansive reading in order to protect the public health.

■ While the argument that the individual, Hodges, is not involved in the manufacture of x-ray machines may have a technical appeal, since those machines were physically manufactured by a corporation and were the property of that corporation, it is apparent that the machines would never have been placed in interstate commerce were it not for the acts and omissions of the individual, Hodges. To allow him to escape liability where the corporation which he directed is defunct, would result in leaving the public with small protection in areas of public health, where corporations, which are manufacturers, distribute their defective products to the public, and then dispose of their assets so that no recourse may be had against them. This is not to intimate that the Corporation in this case fraudulently sold its assets or disposed of them as the contrary appears to be the case.

■ Coming now to the merits of the summary judgment of the plaintiff, the Sixth Circuit Court of Appeals has consistently held that:

> ... on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated ... The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute ....

See *Tee-Pak, Inc. v. St. Regis Paper Company,* 491 F.2d 1193 (6th Cir.1974), citing *Bohn Aluminum and Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir.1962), opinion by Judge Weick.

We find instructive the decision in *British Airways Board v. Boeing Company,* 585 F.2d 946 (9th Cir.1978). In that case, the court stated that "[a] party opposing a motion for summary judgment must introduce 'sufficient evidence supporting the claimed factual dispute * * * to require a jury or judge to resolve the parties' differing versions of the truth at trial.' " (citing cases). *Id.* at 952. In that case, which involved an airplane crash and suit by the British Airways against Boeing, alleging negligent design and manufacture, breach of warranty and strict liability, defendant produced substantial evidence that any preexisting fatigue crack in the fin attachment fitting was irrelevant to the cause of the accident.

It introduced an official report of British Overseas Airways Company, hereinafter BOAC, which was in privity with British Airways Board, which concluded that the fatigue cracks were not an accident-causing factor. Also, there was much other testimony from investigators and experts that the cause of the accident was not due to the crack in the fitting. The Court of Appeals affirmed a summary judgment which was granted to Boeing, stating BOAC had not produced evidence which contradicted the facts, or evidence from which contradictory inferences could be drawn in opposition to the testimony elicited from the expert witnesses and investigators.

In the case at bar, defendant has not disputed the facts upon which the plaintiff's inspectors based their conclusions. It has raised the possibility that there might have been power failures or some other problem at the time that the plaintiff conducted its test, which would render those tests invalid. However, defendant points to no evidence showing any actual malfunctioning of any testing device, and the mere possibility of a malfunction is not sufficient to allow the question of malfunctioning of the testing equipment to be considered by the trier of fact.

In conclusion, we have this day entered summary judgment for the plaintiff.